

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IJC PARTNERS, LLC,                      :    07 Civ.
                                        :
                    Plaintiff,          :
                                        :
        -against-                       :    **COMPLAINT**
                                        :
BRIAN FOGEL,                            :
                                        :
                    Defendant.          :
------------------------------------------------------------x

Plaintiff IJC Partners, LLC ("IJC"), by its attorneys Fox Horan & Camerini LLP, for its complaint against defendant Brian Fogel, alleges as follows:

### NATURE OF THE LAWSUIT

1.   This civil lawsuit is brought by IJC Partners, LLC ("IJC") to enjoin its former employee Brian Fogel from using or disclosing certain of IJC's confidential and proprietary information of which Fogel became aware while employed by IJC, and which confidential and proprietary information Fogel removed from IJC's offices, without IJC's permission, in violation of the terms of his employment and in violation of relevant New York law prohibiting employees from purloining an employer's confidential information for their own gain.

2.   In addition, IJC seeks money damages from Fogel for, *inter alia*, lost business suffered by IJC as a result of Fogel's misappropriation, use or disclosure of IJC's confidential and proprietary information and other money damages as set forth herein.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this is a civil action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

4.      Venue is proper in this district under 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

5.      IJC is a limited liability company having its principal place of business at 20 East 46th Street, Suite 901, New York, New York 10017. IJC is an executive search firm that specializes in permanent and temporary staffing in the finance and technology fields.

6.      Upon information and belief, defendant Brian Fogel is a resident of the State of New Jersey, residing at 35 Pine Lake Terrace, River Vale, New Jersey 07675.

7.      From November 2006 until his resignation without notice on October 26, 2007, Fogel was employed by IJC as a placement counselor and recruiter.

8.      Prior to his employment by IJC, Fogel had never been employed as a placement counselor or recruiter.

## FACTS COMMON TO ALL CLAIMS

9.      Like most executive search firm, IJC obtains staffing assignments from its clients (employers) and seeks to place individual "candidates" to fill the open positions.

11. When IJC successfully places a candidate, the employer pays IJC a pre-arranged fee for the placement, usually equal to a percentage of the employee's compensation for the first year of employment.

<u>IJC'S Candidate Database</u>

12. For the most part, the employment positions that IJC is asked to fill by its clients (employers) require unique or highly specialized skill sets. To be competitive in its industry, it is necessary for IJC to have a large, diverse and confidential database of candidates for its clients to interview and to consider for employment. To attract candidates, they must know that the confidentiality of IJC's database is jealously guarded.

13. IJC maintains such a customized and extensive database containing confidential and proprietary information about past and present candidates in the professional fields serviced by IJC. In addition to each candidate's name and contact information, IJC's database includes such information as the candidate's resume, additional information concerning the candidate's characteristics or needs, salary requirements, and a list of companies to whom the candidate has been referred as well as the results of each referral.

14. IJC's candidate information is not available from public sources or directories, and is compiled and centralized by IJC in an on-line, password-protected, confidential database called "Bullhorn," which is regularly updated by IJC through its management and through its authorized users.

15. Each placement counselor or recruiter at IJC received his or her own private password for the purpose of accessing the Bullhorn database.

16. Bullhorn enables users to search the database to find and sort candidates with particular professional skill sets, specializations, specific experience, and other relevant personal and professional information. Bullhorn also keeps a detailed record of the activities of authorized users of the database. For example, each time a user looks up or views a candidate's information, conducts a search, or prints out information, such activity is recorded and time-stamped by the Bullhorn system.

17. The candidate information maintained by IJC in the Bullhorn database is the lifeblood of IJC's business. The candidate information is closely guarded and access to it is password protected. IJC has a written policy stating clearly that candidate information is confidential and vital to the success of IJC, that such information may not be divulged to third parties or used for non-IJC purposes, and that no candidate information can ever be removed from IJC's offices.

18. Candidate information is not only important as a pool of talent to fill job openings, but many candidates in IJC's database are top executives and specialists in their field that have previously worked with IJC, and are sources of additional business in the form of candidate referral and client referral.

19. Access to the Bullhorn database is given to IJC employees for the sole purpose of placing candidates with IJC's clients and for no other purpose.

20. Moreover, the candidate information that IJC compiles and maintains on the Bullhorn system is obtained at IJC's sole and considerable expense. For example, IJC pays substantial fees to list job openings with various employment-related websites on the internet, and also spends considerable amount of money promoting its services and brand at various business events and in various publications in order to attract candidates.

Fogel's Misappropriation of IJC's Confidential Information

21. While employed at IJC, defendant Fogel was provided with a password to access IJC's confidential and proprietary candidate information on the Bullhorn system.

22. As early as February, 2007, Fogel was given an IJC Employment Handbook setting out, *inter alia*, IJC's policy with respect to the designation of candidate information as confidential and prohibiting the removal of candidate information from IJC's offices.

23. On Friday, October 26, 2007, Fogel abruptly resigned from his position as a recruiter at IJC, without giving notice, stating that he had accepted employment as a recruiter with one of IJC's competitors – a company called "Options Group."

24. In his exit interview, Fogel stated that he had been interviewing at Options Group for approximately five weeks.

25. Immediately after the sudden resignation, IJC's principals reviewed Fogel's activity on the Bullhorn database, and discovered unusual patterns of activity, showing that Fogel, shortly before his resignation, accessed and copied substantial amounts of candidate information from IJC's confidential database.

26. Considering the timing of his resignation and the fact that he left IJC without notice to go work for a competitor, Fogel's Bullhorn database activity shows that Fogel was misappropriating IJC's confidential information for use at his new place of employment before he left IJC.

27. For example, on October 26, 2007, the day of Fogel's resignation, Fogel looked up information for fourteen (14) key candidates, ten of them during the short span between 1:20 p.m. and 1:33 p.m. He resigned at approximately 5:30 on the same day.

28. Additionally, on October 25, 2007, the day before he resigned, Fogel looked up candidate information for over thirty (30) key candidates, twenty-six (26) of them during the non-business hours of 9:41 p.m. and 11:21 p.m. – apparently by accessing the Bullhorn database remotely.

29. Bullhorn records also show that Fogel attempted several operations on the Bullhorn database for which he was not authorized. These attempts were logged as "illegal operation" by the Bullhorn system.

30. In a discussion with the technical staff at Bullhorn, IJC's principals were told that it was likely that those "illegal operations" were the result of attempts by Fogel to export files from the Bullhorn system.

31. In another tell-tale sign of Fogel's misappropriation of IJC's confidential information, not to mention a blatant violation of written company policy, on October 13, 2007, less than two weeks before his resignation, Fogel looked up and printed over twenty-five (25) key IJC candidates from his home – on a Saturday.

### AS AND FOR A FIRST CAUSE OF ACTION
**(For Injunctive Relief for the Breach of Fiduciary Duty)**

32. Plaintiff repeats and realleges each and every allegations set forth in paragraphs 1 thorough 31 above as if fully set forth herein.

33. IJC has, through its own effort and at it substantial expense amassed a database of job applicants or candidates whose names and other personal and professional information are not publicly ascertainable.

34. Such candidate information is the confidential and proprietary property of IJC.

35. During the course of his employment by IJC, defendant Fogel had access to such candidate information through IJC's Bullhorn database.

36. Upon information and belief, while employed by IJC, Fogel copied or otherwise misappropriated IJC's proprietary and confidential candidate information for the purpose of using it in the course of his executive recruiting activities on behalf of his new employer, to compete with IJC.

37. Although the extent of Fogel's misappropriation and use of IJC confidential and proprietary information is unclear, upon information and belief, the relevant market value of such information is not less than $1,000,000.

38. As an employee of IJC, Fogel owed a fiduciary duty to IJC to act in a loyal manner consistent with that trust relationship.

39. Fogel's misappropriation of IJC's confidential and proprietary information for his own benefit during the course of his employment by IJC amounted to a breach of the fiduciary duty owed to IJC.

40. Fogel's misappropriation and use of IJC's proprietary confidential information would not only allow Fogel to reap the fruits of his improper conduct at IJC's expense, but would also permanently and irreparably damage the reputation and associated goodwill IJC has developed as a discrete executive placement recruiter that guards candidate information closely, and one that does not send out sensitive career-related information to any potential employer or third party without checking with the candidate first. Once candidates discover that their personal and professional information has been transferred to a company other that IJC, many of those candidates will no longer

do business with IJC. Such damage to IJC's reputation and goodwill cannot be recovered.

41. IJC would, therefore, suffer irreparable harm for which it could not be adequately compensated if Fogel is not (i) preliminary and permanently enjoined from utilizing in any way, any documents or confidential information learned of, acquired or developed by defendant in his capacity as an employee of plaintiff, including, but not limited to, the names, addresses, telephone numbers, email addresses, or career information of job applicants or candidates procured from IJC's files or computerized database; and (ii) preliminary and permanently enjoined from soliciting or otherwise contacting those persons registered with plaintiff as candidates for employment; and (iii) directed to immediately return to plaintiff or permanently and verifiably destroy all documents in his possession, whether manual or electronic, concerning candidates for employment that were appropriated from IJC's database, and (iv) directed to provide IJC with a list of IJC's confidential information that Fogel disseminated to third parties, including to his current employer, and (v) directed to provide IJC with a list of IJC's candidates that he contacted since leaving IJC.

42. While the disloyalty of Fogel might ultimately be remedied, at least in part, through an award of damages, the misappropriation of plaintiff's confidential and proprietary business information is not something that can be adequately remedied at law.

43. IJC is therefore entitled to a preliminary and permanent injunction (i) enjoining Fogel from utilizing in any way, any documents or confidential information learned of, acquired or developed by defendant in his capacity as an employee of plaintiff, including, but not limited to, the names, addresses, telephone numbers, email

addresses, or career information of job applicants or candidates procured from IJC's files or computerized database; and (ii) preliminary and permanently enjoining Fogel from soliciting or otherwise contacting those persons registered with plaintiff as candidates for employment; and (iii) directing Fogel to immediately return to plaintiff or verifiably permanently destroy all documents in his possession, whether manual or electronic, concerning candidates for employment that were appropriated from IJC's database; and (iv) providing IJC with a list of IJC's confidential information that Fogel disseminated to third parties, including to his current employer; and (v) directing Fogel to provide IJC with a list of IJC's candidates that he contacted since leaving IJC.

### AS AND FOR A SECOND CAUSE OF ACTION
(Misappropriation of Confidential and Proprietary Information)

44. Plaintiff repeats and realleges each and every allegations set forth in paragraphs 1 thorough 43 above as if fully set forth herein.

45. Upon information and belief, defendant Fogel wrongfully converted, appropriated, used and disseminated IJC's confidential and proprietary candidate information referred to in this complaint for the purpose of providing executive placement services which would otherwise be provided by plaintiff IJC.

46. Upon information and belief, the value of such confidential and proprietary information is in excess of $1,000,000.

47. Said acts have damaged plaintiffs in the sum of at least $1,000,000.

### AS AND FOR A THIRD CAUSE OF ACTION
(Unjust Enrichment)

48. Plaintiff repeats and realleges each and every allegations set forth in paragraphs 1 thorough 47 above as if fully set forth herein

49. Fogel's wrongful misappropriation of IJC's confidential and proprietary candidate information caused him to be enriched under circumstances that would make it unconscionable for Fogel to retain such benefits.

50. Fogel's enrichment was unjust, and was at the expense of IJC.

51. Said acts have damaged plaintiffs in the sum of at least $1,000,000.

### AS AND FOR A FOURTH CAUSE OF ACTION
(For Damages for the Breach of Duty of Loyalty)

52. Plaintiff repeats and realleges each and every allegations set forth in paragraphs 1 thorough 51 above as if fully set forth herein.

53. Under New York Law, an employee whose actions are disloyal to the interests of his employer forfeits his right to compensation for services rendered by him and if he is paid without knowledge of his disloyalty he may be compelled to return what he has improperly received.

54. During the period that Fogel was disloyal to IJC by misappropriating IJC's proprietary and confidential information, Fogel received payments from IJC in excess of $80,000.

55. IJC is therefore entitled to a judgment against Fogel awarding IJC the money paid to Fogel during the time he was disloyal, amounting to no less than $80,000.

56. IJC is further entitled to a judgment declaring that no further monies are due to defendant as compensation or otherwise.

**WHEREFORE,** plaintiff IJC Partners, LLC request judgment as follows:

A.      Granting preliminary and permanent injunction relief: (i) enjoining Fogel from utilizing in any way, any documents or confidential information learned of, acquired or developed by defendant in his capacity as an employee of plaintiff, including, but not limited to, the names, addresses, telephone numbers, email addresses, or career information of job applicants or candidates procured from IJC's files or computerized database; and (ii) enjoining Fogel from soliciting those persons registered with plaintiff as candidates for employment; and (iii) directing Fogel to immediately return to plaintiff or permanently and verifiably destroy all documents in his possession, whether manual or electronic, concerning candidates for employment that were appropriated from IJC's database; and (iv) directing Fogel to provide IJC with a list of IJC's confidential information that Fogel disseminated to third parties, including to his current employer. (v) and directing Fogel to provide IJC with a list of IJC's candidates that he contacted since leaving IJC.

B.      Awarding IJC damages (i) on its misappropriation claim in the amount of $1,000,000, and (ii) on its just enrichment claim in the amount of $1,000,000, and (iii) on its breach of duty of loyalty claim in the amount of $80,000.

C.      Awarding IJC its costs and disbursements in connection with this action, including reasonable attorneys' fees; and

D.      Granting IJC such other and further relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY**

Dated:  New York, New York
        November 1, 2007

FOX HORAN & CAMERINI LLP

By: _____
    V. David Rivkin (VR-6734)
    Katharine Griffing (KG-2331)

825 Third Avenue, 12th Floor
New York, New York 10022
Tel. (212) 480-4800

*Attorneys for Plaintiff*
*IJC Partners, LLC*